# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Maurice Hunter,** | : |
| **Plaintiff** | : |
| v. | : |
| **City of Hartford,** | : |
| | :    **October 28, 2020** |
| **Defendant** | : |

## COMPLAINT

## I.     INTRODUCTION

1.     The plaintiff, Maurice Hunter, brings this action alleging that the defendant City of Hartford failed and refused to accommodate his disability and terminated him because of his disability and in retaliation for his exercise of rights in complaining about discriminatory treatment. The plaintiff states claims for violation of his rights under the Americans with Disabilities Act, 42 U.S.C. 12101, as amended, and the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. 46a-60, et seq. The plaintiff seeks as remedies reinstatement, back pay, compensation for his pain, suffering, and emotional distress, reasonable attorney's fees and costs, prejudgment and postjudgment interest, and such other relief as the Court may award.

## II.    JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. §1331.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to his claim occurred within this judicial district.

III. ADMINISTRATIVE PROCEEDINGS

4. On or about August 5, 2020, the Connecticut Commission on Human Rights and Opportunities issued a release of jurisdiction as to the plaintiff's administrative complaint of disability discrimination and retaliation.

5. On or about September 29, 2020, the federal Equal Employment Opportunities Commission issue a Right to Sue letter in connection with the plaintiff's administrative complaint of disability discrimination and retaliation.

IV. PARTIES

6. The plaintiff is Maurice Hunter, who resides at 32 Greenfield Street, Hartford, Connecticut.

7. Maurice Hunter is a qualified person with a disability as that term is defined at 42 U.S.C. §12102(1) and is disabled as that term is defined at Conn.Gen.Stat.§46a-51(15). As the result of an incident in which his left femur was shattered, one of Hunter's legs is shorter than the other, so that he walks with a pronounced limp and is substantially limited in the major life activities of walking and running.

8. At all times relevant to this Complaint, Maurice Hunter was an employee as that term is defined at 42 U.S.C. §12111(4) and Conn.Gen.Stat. §46a-51(9).

9. The defendant City of Hartford is a municipality organized under the laws of the State of Connecticut. The City of Hartford employs more than five hundred (500) people. At all times relevant to the Complaint, the City of Hartford was an employer as that term is defined at 42 U.S.C. §12111(5) and Conn.Gen.Stat. §46a-51(10).

V.	FACTS

10.	In or about February 2019, the plaintiff applied for a publicly posted position of Maintainer I with the defendant's Department of Public Works.

11.	In applying for the position, the plaintiff completed a City of Hartford Residency Affidavit.

12.	In applying for the position, the plaintiff disclosed, *inter alia*, that he had a physical disability, in that one leg was shorter than the other.

13.	Moreover, the plaintiff's physical disability was obvious, because he walked and does walk with a pronounced limp.

14.	At the time of hire for the position, the plaintiff was required to undergo a physical examination by the defendant's examining physician.

15.	At that time, the doctor remarked on the plaintiff's physical disability, but said that he did not believe it would prevent the plaintiff from performing the duties of the Maintainer I position.

16.	The job description for the Maintainer I position indicates that it includes jobs performed in several different divisions of the defendant, including both outside maintenance work and inside maintenance work.

17.	On or about September 23, 2019, the defendant hired the plaintiff for the position Maintainer I.

18.	At the time of hire, the defendant informed the plaintiff that he would be on probation for six months, with his probation scheduled to end in March of 2020.

19. Notwithstanding the plaintiff's physical disability and although he could have been reasonably accommodated by assigning the plaintiff to other Maintainer I duties, the defendant assigned the plaintiff to a trash collection crew made up of younger, non-disabled men in their 20's.

20. A requirement of the plaintiff's assignment to the trash collection crew was to walk behind the truck. The younger workers preferred to run. Plaintiff's physical disability interfered with him keeping up with his younger, non-disabled co-workers, and for that reason he was often lagging behind and trying to catch up.

21. The younger co-workers would verbally harass the plaintiff and criticize his work habits, saying he was too slow and that he was going to be fired.

22. After several days on the job, plaintiff suffered a minor back injury caused in part by the defendant sending him out to work without proper safety equipment.

23. When the plaintiff was injured, his supervisor, Richard, was sent to the truck's location to pick him up.

24. Richard told the plaintiff that it did not look good for him to report an injury on the first day working on the truck and told him he should "shake it off" instead.

25. The plaintiff responded that he was in pain and needed to see a doctor.

26. The plaintiff was sent to see the defendant's workplace injury doctor.

27. The plaintiff saw the doctor, who authorized the plaintiff returning to work on light duty.

28. The doctor also told the plaintiff to communicate to the plaintiff's managing supervisor, Izzy (last name unknown), that he should call the doctor because he had concerns about the plaintiff continuing on the trash collection crew.

29. The plaintiff missed three days of work as a result of the back injury because the defendant told him that there was no light duty available.

30. The plaintiff talked to Izzy and told him that the defendant's doctor wanted Izzy to call him. Izzy responded that he knew that because the doctor had already left a message for him.

31. On information and belief, Izzy did not return the doctor's call.

32. The plaintiff returned to work on the trash collection crew.

33. The day after his return to the trash collection crew, the plaintiff went to the defendant's Human Resources office and spoke with Steve Francis, who was at that time the Acting Director of Human Resources.

34. The plaintiff told Francis that he was still experiencing some pain from his injury and wanted to be transferred to an indoor Maintain I position.

35. Francis responded that the plaintiff could not be transferred until he had completed his six month probationary period.

36. The plaintiff continued to perform his duties on the trash collection crew, despite experiencing pain as a result of his efforts to keep up with his younger, non-disabled co-workers and despite being verbally harassed by his co-workers.

37. In or about early November, the plaintiff returned to the Human Resources office to complain to Steve Francis about the problems he was experiencing on the trash collection crew, including his harassment by co-workers because he could not keep up.

38. Francis took the plaintiff's complaint and told him that the defendant would investigate it.

39. Shortly after that, the defendant had another supervisor, Virgil Griffin, follow the trash truck to which the plaintiff was assigned, to observe him for several stops.

40.     Griffin told the plaintiff that his performance was lacking because he could not keep up with his non-disabled co-workers and that the plaintiff needed to pick up the pace.

41.     That evening Griffin told the plaintiff that he was going to stop by his house and talk to him.

42.     Griffin came to the plaintiff's house and before he left informed him that the defendant had terminated the plaintiff.

43.     The next day, the plaintiff returned to the Human Resources office to speak with Steven Francis, who told him that even though he had been terminated, the defendant was still going to investigate his previous complaint.

44,     At no time after the plaintiff's termination has the defendant contacted him about its alleged investigation of his complaint.

45.     On or about December 12, 2019, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities and the federal Equal Employment Opportunities Commission alleging that he had been discriminated against by the City of Hartford because of his disability.

46.     On or about May 7, 2020, the plaintiff applied for an open Maintainer I position with the defendant.

47.     In completing the application, the plaintiff filled out and signed a City of Hartford Residency Affidavit.

48.     The defendant did not consider the plaintiff for the position of Maintainer I.

49.     The defendant falsely represented that it could not consider the plaintiff for the Maintain I position because he had not provided sufficient documentation in support of his Residency Affidavit.

50. Throughout the plaintiff's employment, the defendant was aware of the plaintiff's physical disability but failed and refused to accommodate the plaintiff by assigning him to other Maintainer I duties.

51. The defendant also failed and refused to take any action with regards to the plaintiff's complaint that he was being verbally harassed by his co-workers because he had difficulty keeping their pace at work.

52. At all times relevant to the Complaint, the plaintiff was able to perform the essential functions of the Maintenance I position with or without a reasonable accommodation.

53. The defendant's actions as described above caused the plaintiff to suffer a loss of the wages and benefits of employment, and to experience pain, suffering, and emotional distress.

VI. COUNT ONE: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

1. The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54. The defendant's actions in failing to provide a reasonable accommodation to the known physical limitations of an otherwise qualified individual with a disability are in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq.

VII. COUNT TWO: DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

1. The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54. The defendant's actions in discriminating against the plaintiff by refusing to reassign him, terminating the plaintiff's employment, and refusing to consider the plaintiff's application(s) for re-hire were motivated by animus on account of the plaintiff's disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq.

VIII.   COUNT THREE: RETALIATION IN EMPLOYMENT IN VIOLATION OF THE ADA

1.  The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54.  The defendant's actions in refusing to reassign the plaintiff, terminating the plaintiff's employment, and refusing to consider the plaintiff's application(s) for re-hire were motivated by animus because the plaintiff's opposed an act or practice made unlawful by the Americans with Disabilities Act in violation of 42 U.S.C. §12203 of said act.

IX.   COUNT FOUR: FAILURE TO ACCOMMODATE IN VIOLATION OF THE CFEPA

1.  The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54.  The defendant's actions in failing to provide a reasonable accommodation to the known physical limitations of a disabled person are in violation of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-51, et seq.

X.   COUNT FIVE: DISCRIMINATION IN VIOLATION OF THE CFEPA

1.  The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54.  The defendant's actions in discriminating against the plaintiff by refusing to reassign him, terminating the plaintiff's employment, and refusing to consider the plaintiff's application(s) for re-hire were motivated by animus on account of the plaintiff's disability in violation of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-51, et seq.

XI.   COUNT SIX: RETALIATION IN EMPLOYMENT IN VIOLATION OF THE CFEPA

1.  The plaintiff re-states and re-alleges paragraphs 1 through 53, above.

54.  The defendant's actions in refusing to reassign the plaintiff, terminating the plaintiff's employment, and refusing to consider the plaintiff's application(s) for re-hire were motivated by animus because the plaintiff opposed a discriminatory employment practice in violation of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-51, et seq.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff seeks as his remedies:

1. Reinstate the plaintiff to his former position with the City of Hartford with restoration of his rate of pay, benefits, and seniority, and with any promotions that he would have received but for defendant's discriminatory treatment;

2. Award the plaintiff his economic damages, including back pay and the value of lost benefits suffered on account of the termination of his employment;

3. Award the plaintiff compensatory damages, including for his pain, suffering, and emotional distress;

4. Award the plaintiff his reasonable attorney's fees and costs; and

5. Award such other relief as the Court may deem appropriate.

REQUEST FOR A JURY TRIAL

The plaintiff respectfully requests a jury trial as to all of his claims to the extent that he is entitled by law.

RESPECTFULLY SUBMITTED
MAURICE HUNTER,
THE PLAINTIFF, by

  / s /  Peter Goselin
Peter Goselin ct06074
The Law Office of Peter Goselin
557 Prospect Avenue, 2nd Floor
Hartford, Connecticut 06105
Tel. 860-580-9675
Fax 860-232-7818
pdgoselin@gmail.com